# EDMONDS' SELECT CASES.

## AT CHAMBERS,
### JULY, 1834.

Before EDMONDS, Recorder of Hudson.

In the matter of RACHEL HANSEN.

Where the parents of a child voluntarily live separate from each other, the question which shall have its custody, is to be determined on habeas corpus, not so much by the rights of the respective parents as by the consideration of what is best for the child.

In determining that, the choice of the child, when of sufficient age and intelligence, is entitled to great weight.

ON the petition of the mother, a writ of habeas corpus was issued to bring up the body of Rachel Hansen, alleged to be illegally detained by her father, Tunis Hansen.

A return to the writ was made by the father, wherein he confessed the detention and claimed a right, as father, to the custody of the child. Issue was joined and testimony was taken, from which it appeared that the girl was about twelve years old, and was an only child; that the father was a worthless, drinking man, and the mother a hard-working, industrious woman of exemplary deportment; that they had lived apart for several years, during which time the mother had retained the custody of the child, and had maintained and educated her without any assistance from the father; that his habits continued bad during the whole time, and he had no home except a room in which he slept, but took his meals wherever he could get them; that he had frequently importuned his wife to live

2—vol. 1.

with him again, which she refused to do; and that, in order to force her to do so, he had enticed the child into his room, where he had locked her up and refused to return her to her mother unless she would consent to live with him.

*J. R. Van Rensselaer*, for the father, insisted upon the superior right of the father to the custody of the child, under the repeated decisions of our courts.

*A. L. Jordan*, for the mother, dwelt upon the impropriety of committing the child, and she a young girl, to a man who had no home, was of bad habits, and incapable of properly caring for her.

*The Recorder* said that it was one of the most difficult of questions to determine what should be done with young children, when their parents so far forgot their duties to themselves and their offspring as to live apart from each other, and thus placed an insuperable difficulty in the way of performing their joint duty. When divorces were granted the courts disposed of that question, but when no divorce was applied for, and where, as in this case, the separation was voluntary, it was no easy matter to determine between the respective rights of the parents.

But on habeas corpus it was not always necessary to pass upon the question of right, but more properly to ascertain what was best for the child. Where the parents chose to present themselves with conflicting rights, the proper inquiry was as to what was most conducive to the welfare of the child, and where the child was old enough to have an intelligent choice, it was the practice of the court to permit it to determine the question, relying upon that instinct which would teach it to say where it would be best off, and be treated the best.

This child was old enough and intelligent enough to know that, and he should therefore consult her in the matter, not meaning to leave it to her absolute disposal, but inclined to attach great weight to her choice.

The Recorder then asked the girl with whom she would prefer to live. She promptly answered, "with mother."

The Recorder so ordered, for the reason that the choice accorded with his own convictions, founded upon the facts of the case, that such a course would be most conducive to the welfare of the child, and because it was not necessary, under the circumstances, to pass upon the rights of the parents, they being left to their resort to the proper tribunal for that purpose.

[This case was decided before the case of *The People* v. *Chegaray*, 18 Wend. 637.]